**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JAY KAY COLLISION CENTER, INC., DLR AUTO GROUP LLC, SMITH COLLISION CENTER, BROADWAY PRECISION COLLISION, and EAST MCCOMB BODY SHOP, on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>CDK GLOBAL, LLC,<br><br>    Defendant. | Case No. 1:24-cv-5313<br><br>Hon. Jeffrey I. Cummings |

---

**MEMORANDUM OF LAW IN SUPPORT OF CDK GLOBAL, LLC'S
MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT**

---

## TABLE OF CONTENTS

INTRODUCTION..................................................................................................................1

BACKGROUND ..................................................................................................................2

LEGAL STANDARD ..........................................................................................................4

ARGUMENT .......................................................................................................................4

I.      Choice of Law ............................................................................................................4

II.    Plaintiffs' Negligence Claim Fails as a Matter of Law ......................................5

     A.     Plaintiffs Fail to Plead Proximate Cause .................................................6

     B.     Plaintiffs Fail to Plead a Duty of Care Owed by CDK to Plaintiffs .....................11

     C.     Plaintiffs Fail to Sufficiently Plead Breach of Duty ...............................15

     D.     Illinois and California Economic-Loss Rules Bar Plaintiffs' Negligence Claim...........................................................................16

III.    Plaintiffs' Unjust Enrichment Claim Fails as a Matter of Law..................................19

CONCLUSION ..................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Admiral Indem. Co. v. Otis Elevator Co.*,
2021 WL 4306145 (N.D. Ill. Sept. 22, 2021) ........................................................................16

*Asch v. Teller, Levit & Silvertrust, P.C.*,
2003 WL 22232801 (N.D. Ill. Sept. 26, 2003) ......................................................................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................................4, 16

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983)................................................................................................................7

*In re B.C. Rogers Poultry, Inc.*,
455 B.R. 524 (Bankr. S.D. Miss. 2011)................................................................................24

*Barletti v. Connexin Software, Inc.*,
2023 WL 6065884 (E.D. Pa. Aug. 17, 2023) ......................................................................21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................................4

*Bilek v. Fed. Ins. Co.*,
8 F.4th 581 (7th Cir. 2021) ....................................................................................................4

*Bloomingdale State Bank v. Capitol Bank of Chicago*,
451 N.E.2d 599 (Ill. App. Ct. 1983) ....................................................................................11

*Blouin v. Johnson & Johnson*,
2017 WL 4969345 (S.D. Miss. Nov. 1, 2017)......................................................................24

*In re Boeing 737 MAX Pilots Litig.*,
638 F. Supp. 3d 838 (N.D. Ill. 2022) ............................................................................ *passim*

*Cal. Crane Sch., Inc. v. Google LLC*,
722 F. Supp. 3d 1026 (N.D. Cal. 2024) ................................................................................23

*Calcagno v. Personalcare Health Mgmt., Inc.*,
565 N.E.2d 1330 (Ill. App. 1991) ........................................................................................16

*In re Chicago Flood Litig.*,
176 Ill. 2d 179, 680 N.E.2d 265, 274 (Ill. 1997) .........................................................16, 17, 18

*Christensen v. Boeing Co.*,
   2021 WL 83548 (N.D. Ill. Jan. 11, 2021) .......................................................................7, 8

*City of Chicago v. Beretta U.S.A. Corp.*,
   821 N.E.2d 1099 (Ill. 2004) .......................................................................6

*Clausell v. Bourque*,
   158 So. 3d 384 (Miss. Ct. App. 2015) .......................................................................11

*Clifford v. Crop Prod. Servs. Inc.*,
   627 F.3d 268 (7th Cir. 2010) .......................................................................5

*Coatney v. Ancestry.com DNA, LLC*,
   93 F.4th 1014 (7th Cir. 2024) .......................................................................12, 25

*Coker v. Sw. Bell Tel. Co.*,
   580 P.2d 151 (Okla. 1978) .......................................................................9

*Coldwell Banker Residential Brokerage Co. v. Superior Ct.*,
   117 Cal. App. 4th 158 (2004) .......................................................................10

*Cole v. Chevron USA, Inc.*,
   554 F. Supp. 2d 655 (S.D. Miss. 2007) .......................................................................24

*Conroy v. Regents of Univ. of Cal.*,
   203 P.3d 1127 (Cal. 2009) .......................................................................6

*Dillon v. Greenbriar Digging Serv., Ltd.*,
   919 So. 2d 172 (Miss. Ct. App. 2005) .......................................................................10

*Dinerstein v. Google, LLC*,
   484 F. Supp. 3d 561 (N.D. Ill. 2020) .......................................................................20

*Douglas v. Trustmark Nat'l Bank*,
   201 F. Supp. 3d 800 (S.D. Miss. 2016) .......................................................................9

*Dundee Cement Corp. v. Chemical Labs, Inc.*,
   712 F.2d 1166 (7th Cir. 1983) .......................................................................7, 8

*E. River S.S. Corp. v. Transamerica Delaval, Inc.*,
   476 U.S. 858 (1986) .......................................................................10

*Ellis v. Anderson Tully Co.*,
   727 So. 2d 716 (Miss. 1998) .......................................................................23, 24

*Fed. Deposit Ins. Corp. v. Ching*,
   189 F. Supp. 3d 978 (E.D. Cal. 2016) .......................................................................23

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*,
2010 WL 2813788 (D.N.J. July 9, 2010) ..............................................................................21

*Fredrick v. Simmons Airlines, Inc.*,
144 F.3d 500 (7th Cir. 1998) .....................................................................................................5

*Hankins v. Alpha Kappa Alpha Sorority, Inc.*,
447 F. Supp. 3d 672 (N.D. Ill. 2020) ..................................................................................15

*Hanouchian v. Steele*,
51 Cal. App. 5th 99 (Cal. App. Ct. 2020) ..........................................................................11

*Harvell v. Goodyear Tire & Rubber Co.*,
164 P.3d 1028 (Okla. 2006) ..................................................................................................25

*Hemp Hydrate Brands Corp. v. Private Label Supplements, Inc.*,
2024 WL 4256713 (W.D. Okla. Sept. 20, 2024) ..............................................................25

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
545 N.E.2d 672 (Ill. 1989) ....................................................................................................20

*Hughes Masonry Co., Inc. v. Greater Clark Cnty. Sch. Bldg. Corp.*,
659 F.2d 836 (7th Cir. 1981) ................................................................................................25

*Indep. Tr. Corp. v. Fid. Nat. Title Ins. Co. of New York*,
577 F. Supp. 2d 1023 (N.D. Ill. 2008) ..............................................................................22

*Irwin v. Jimmy John's Franchise, LLC*,
175 F. Supp. 3d 1064 (C.D. Ill. 2016) ..............................................................................21

*Jim Pegram Farms v. JPMorgan Chase Bank, N.A.*,
2022 WL 4088079 (N.D. Miss. Sept. 6, 2022) ................................................................24

*Jordan v. Nationwide Trustee Servs., Inc.*,
2014 WL 6982641 (S.D. Miss. Dec. 9, 2014) ..................................................................23

*Kafka v. Wells Fargo Sec., LLC*,
2024 WL 4533332 (2d Cir. Oct. 21, 2024) ......................................................................15

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
313 U.S. 487 (1941) ...................................................................................................................4

*Knight v. Enbridge Pipelines (FSP) L.L.C.*,
759 F.3d 675 (7th Cir. 2014) ................................................................................................12

*Kraft Chem. Co. v. Ill. Bell Tel. Co.*,
608 N.E.2d 243 (Ill. App. Ct. 1992) .................................................................................7, 9

*Kuhns v. Scottrade, Inc.*,
868 F.3d 711 (8th Cir. 2017) ........................................................................16

*Lamb v. The Scotts Miracle-Gro Co.*,
2007 WL 1959291 (E.D. Okla. July 2, 2007) ...............................................11

*Lee v. Enter. Fin. Group*,
2009 WL 1362605 (W.D. Okla. May 14, 2009) ............................................25

*Lewis v. Lead Indus. Ass'n*,
793 N.E.2d 869 (Ill. Ct. App. 2003) ...............................................................6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)......................................................................................6, 7

*Lilly v. Ford Motor Co.*,
2002 WL 507126 (N.D. Ill. Apr. 3, 2002) .......................................................5

*Lowery v. Echostar Satellite Corp.*,
160 P.3d 959 (Okla. 2007) ............................................................................14

*MacLeod v. Commonwealth Edison*,
248 N.E.3d 1133 (Ill. App. Ct. 2024) ..............................................................6

*MeGee v. El Patio, LLC*,
524 P.3d 1283 (Okla. 2023) .............................................................................6

*Melican v. Regents of Univ. of Cal.*,
151 Cal. App. 4th 168 (Cal. App. Ct. 2007) .................................................11

*MH Pillars Ltd. v. Realini*,
277 F. Supp. 3d 1077 (N.D. Cal. 2017) .........................................................23

*Mitchell Crane Servs., Inc. v. Page*,
126 So. 3d 29 (Miss. 2013)............................................................................10

*Moorman Mfg. Co. v. Nat'l Tank Co.*,
435 N.E.2d 443 (Ill. 1982)........................................................................16, 17

*Nibbi Bros., Inc. v. Home Fed. Sav. & Loan Ass'n*,
205 Cal. App. 3d 1415 (1988) .......................................................................23

*Orthman v. Premiere Pediatrics, PLLC*,
545 P.3d 124 (Okla. App. 2024).....................................................................25

*Oyoque v. DePaul Univ.*,
520 F. Supp. 3d 1058 (N.D. Ill. 2021) .............................................................4

*Pearson v. Walmart Inc.*,
　2021 WL 4477816 (N.D. Ill. Sept. 30, 2021) ........................................................11

*Perdue v. HyVee, Inc.*,
　455 F. Supp. 3d 749 (C.D. Ill. 2020) ...............................................................5, 21

*Permenter v. Milner Chevrolet Co.*,
　229 Miss. 385, 91 So.2d 243 (Miss. 1956) ..........................................................10

*Philadelphia Indem. Ins. Co. v. Bellin Mem. Hosp.*,
　2023 WL 6388208 (N.D. Ill. Sept. 29, 2023) ......................................................13

*R Power Biofuels, LLC v. Chemex LLC*,
　2016 WL 6663002 (N.D. Cal. Nov. 11, 2016) .....................................................18

*R.C. v. Walgreen Co.*,
　733 F. Supp. 3d 876 (C.D. Cal. 2024) .................................................................12

*Randle v. City of Tulsa*,
　2024 WL 2949398 (Okla. 2024) ...........................................................................25

*Rardin v. T&D Mach. Handling, Inc.*,
　890 F. 2d 24 (7th Cir. 1989) ......................................................................9, 16, 17

*Roberson ex rel. Roberson v. Novartis Pharm. Corp.*,
　2011 WL 1740137 (N.D. Ill. May 5, 2011) .........................................................13

*Rogers v. Shelter Mut. Ins. Co.*,
　2011 WL 4565472 (S.D. Miss. Sept. 29, 2011) ...................................................13

*Russell v. Walmart, Inc.*,
　680 F. Supp. 3d 1130 (N.D. Cal. 2023) ...............................................................23

*S. Cal. Gas Leak Cases*,
　18 Cal. App. 5th 581 (2017) ............................................................................9, 14

*S. Cal. Gas Leak Cases*,
　441 P.3d 881 (Cal. App. Ct. 2019) ................................................................14, 18

*Sanderson Farms, Inc. v. McCullough*,
　212 So. 3d 69 (Miss. 2017) ....................................................................................6

*Simpkins v. CSX Transp., Inc.*,
　965 N.E.2d 1092 (Ill. 2012) ....................................................................11, 12, 14

*Smith v. Loyola Univ. Med. Ctr.*,
　2024 WL 3338941 (N.D. Ill. July 9, 2024) ..........................................................12

*In re SuperValu, Inc.*,
    925 F.3d 955 (8th Cir. 2019) ...............................................................21

*TCF Mortg. Corp. v. Gelber Holding Co.*,
    1991 WL 230843 (N.D. Ill. Oct. 29, 1991)...........................................21

*Thornton v. Ford Motor Co.*,
    297 P.3d 413 (Okla. App. 2012) ...........................................................15

*Tremblay v. OpenAI, Inc.*,
    716 F. Supp. 3d 772 (N.D. Cal. 2024) ..................................................23

*Uddin v. Automobili Lamborghini Am., LLC*,
    2025 WL 458421 (N.D. Cal. Feb. 11, 2025) .........................................16

*Vancouver Furniture v. Gen. Elec. Retail Sys.*,
    967 F.2d 596 ..........................................................................................13

*Vill. of Rockton, Ill. v. Sonoco Prods. Co.*,
    135 F. Supp. 3d 700 (N.D. Ill. 2015) ....................................................22

*In re Waste Mgmt. Data Breach Litig.*,
    2022 WL 561734 (S.D.N.Y. Feb. 24, 2022).........................................15

*Webster v. Bradford-Scott Data, LLC*,
    2025 WL 560917 (N.D. Ind. Feb. 20, 2025).....................................20, 21

*Wofford v. E. State Hosp.*,
    795 P.2d 516 (Okla. 1990) ....................................................................11

*Wright ex rel. Wright v. United States*,
    69 F. Supp. 3d 606 (S.D. Miss. 2014)...................................................15

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
    525 F. Supp. 3d 1017 (N.D. Cal. 2021) ...........................................18, 19

**Statutes**

15 U.S.C. § 45(a) ...........................................................................................13

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ................................................4, 25

**Other Authorities**

PROSSER AND KEETON ON THE LAW OF TORTS § 92 (5th ed. 1984)..............................14

## INTRODUCTION

CDK Global, LLC provides software products and services to car dealerships nationwide. In June 2024, CDK was the victim of a ransomware attack. To protect its systems and its customers, CDK proactively and temporarily took its applications and third-party integrations offline. CDK then moved quickly to expel the threat actor, investigate the attack, and restore all major applications and third-party integrations within a matter of weeks.

Plaintiffs Jay Kay Collision Center, Smith Collision Center, Broadway Precision Collision, and East McComb Body Shop are vehicle-repair shops that buy parts from car dealerships. Plaintiff DLR Auto Group, LLC is an automobile broker that facilitates car sales between car buyers and dealerships. Plaintiffs are "not customers of CDK Global." ECF No. 56 ("Compl.") ¶ 58. Nor do they use CDK's software products or services. Remarkably, however, plaintiffs filed this putative class action seeking economic losses allegedly caused by the ransomware attack on CDK—even though they do not deal with CDK.

Unlike the typical data-breach case, plaintiffs do not allege a compromise of any of their data. Nor do they allege facts showing a clear legal relationship with CDK. Instead, to try and manufacture claims for negligence and unjust enrichment, plaintiffs string together a lengthy and speculative chain of events: CDK's data security measures were inadequate, which led to a ransomware attack, which caused a temporary shutdown of CDK servers, which caused impact to CDK's software products, which were used by certain (unidentified) dealership customers of CDK, which caused those dealership customers of CDK to have a more difficult time or be unable to source and sell parts or finalize vehicle sales contracts, which caused customers or other business counterparties of those CDK dealership customers to be unable to order or obtain parts (despite the existence of other part vendors who do not use CDK software), which caused a delay in

completing scheduled repairs or sales, which caused plaintiffs to lose profits or suffer other economic losses.

This extremely attenuated theory of liability fails as a matter of law multiple times over. As to negligence, the remote nature of plaintiffs' harm means that plaintiffs cannot establish proximate cause or a duty of care (let alone breach). As to unjust enrichment, plaintiffs cannot show that CDK unjustly retained any benefit at plaintiffs' expense. For these reasons, and those that follow, the Court should dismiss plaintiffs' complaint with prejudice.

## BACKGROUND

CDK provides software-management products and services to dealerships around the country. In June 2024, CDK experienced a ransomware attack. Compl. ¶¶ 20, 21. Shortly thereafter, CDK proactively and temporarily took all applications offline. *See id.* ¶¶ 20-25. CDK worked tirelessly to ensure containment of the criminal actor, restore impacted systems, conduct a third-party investigation and review of forensic data, and communicate with customers about the attack. CDK resumed operation of most services to customers by July 4, 2024, and by August 2024, third-party experts confirmed that there was no compromise of dealer, dealer employee, or consumer personally identifiable information that would give rise to any notification obligations.[1]

The complaint does not allege any direct relationship between any plaintiff and CDK. Plaintiffs concede that they are not CDK customers and are not themselves users of CDK's software products. *See id.* ¶¶ 19, 29. Plaintiffs do not allege that they had any interactions directly with CDK; provided any data or information to CDK; relied on any CDK statement, policy, or

---

[1]  *See* Henry, Jim, "*Dealership Software Comes Back Online After Cyberattack at CDK Global*," Forbes, July 3, 2024. https://www.forbes.com/sites/jimhenry/2024/07/03/dealership-software-comes-back-online-after-cyberattack-at-cdk-global/; Campbell, Jaelyn, "*CDK Global confirms no data breach in June cyberattacks*," CBT, August 27, 2024. https://www.cbtnews.com/cdk-global-confirms-no-data-breach-in-june-cyberattacks/.

agreement; made any direct payment to CDK related to vehicles, parts, security, software, or otherwise; were aware of CDK prior to the incident; or had an understanding with CDK (or even its dealership customers) regarding the provision of uninterrupted CDK software services.

Jay Kay, Smith, Broadway, and East McComb (collectively the "repair-shop plaintiffs") are auto-repair shops located in Illinois, Mississippi, and Oklahoma, respectively. *Id.* ¶¶ 5, 7-9. The repair-shop plaintiffs allege that they buy parts from dealerships and that those dealerships use CDK software to manage part inventory and process part orders. *Id.* ¶¶ 43, 50, 53, 56. The repair-shop plaintiffs do not identify which dealerships they buy parts from. The repair-shop plaintiffs are not CDK customers, do not themselves use CDK software, and do not pay CDK for parts or software products or services.[2] Car dealerships may sell parts to repair shops either directly through their service centers or indirectly through other third-party marketplace suppliers.[3]

DLR is a California automobile broker that "acts as an intermediary between the car buyer and the dealership." *Id.* ¶ 46. CDK provides software-management products and services to dealerships, some of which may work with vehicle brokers to sell vehicles. *See id.* ¶ 2. To facilitate car sales, DLR purportedly negotiates with an unidentified set of dealerships that may or may not be CDK customers. *See id.* ¶ 46. Vehicle brokers like DLR do not facilitate sales on behalf of or purchase vehicles from CDK, and CDK does not sell vehicles. *See supra*, n.2. DLR does not allege that it pays CDK or its dealership customers for software or any other products or services. *Id.* ¶¶ 45-48. DLR receives commissions from dealers for arranging vehicle sales. *Id.* ¶ 46.

While plaintiffs allege that CDK's maintenance of sensitive data created a "heightened risk of cyberattack," they make no claim that their data was exfiltrated. *Id.* ¶ 30. Instead, they allege

---

[2]  *See The CDK Dealership Xperience*, Aug. 14, 2023, https://www.cdkglobal.com/media-center/cdk-global-brings-digital-transformation-automotive-retail-new-category-software-cdk.
[3]  *See* Khristopher J. Brooks, *3 Ways the CDK Cyberattack is Affecting Car Buyers*, CBS News, June 25, 2024, https://www.cbsnews.com/news/cdk-cyber-attack-ransomware-hacked-dealerships/.

harm stemming from purported "interruption" to CDK dealership customers' business operations. *Id.* ¶¶ 44, 51, 54, 57. When CDK temporarily took its applications offline to contain and remediate the attack, plaintiffs allege they were unable to "obtain vehicles or finalize sales contracts" (DLR) with CDK dealership customers and were "unable to order and obtain the parts necessary to complete scheduled vehicle repairs" (the repair-shop plaintiffs) from CDK dealership customers. *Id.* ¶¶ 43, 46, 50, 53, 56. Plaintiffs allege lost earnings from vehicle sales (DLR) and losses related to the inability to fulfill service requests (the repair-shop plaintiffs). *Id.* ¶¶ 44, 48, 51, 54, 57.

## LEGAL STANDARD

A court must dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) if the alleged facts do not plausibly entitle the plaintiff to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 560-61 (2007).[4] A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Legal conclusions "must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The "plausibility determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586-87 (7th Cir. 2021). And, in a putative class action, courts assess only "the claims of the named plaintiffs, not those of the putative class." *Oyoque v. DePaul Univ.*, 520 F. Supp. 3d 1058, 1063 n.3 (N.D. Ill. 2021).

## ARGUMENT

### I.    Choice of Law

Plaintiffs' complaint is silent on choice of law. Federal courts sitting in diversity apply the choice of law rules of the state in which they sit. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S.

---

[4]  All internal quotations and citations have been cleaned up unless otherwise noted. All emphasis has been added, unless otherwise noted as well.

487, 496 (1941). Illinois applies the "most significant relationship" test, consisting of four factors: "(1) the place of the injury, (2) the place where the injury-causing conduct occurred, (3) the domicile of the parties, and (4) the place where the relationship between the parties is centered." *Fredrick v. Simmons Airlines, Inc.*, 144 F.3d 500, 504 (7th Cir. 1998). "In practice, this means that the law of the place of injury controls unless [another jurisdiction] has a more significant relationship with the occurrence and with the parties." *Id.* Here, the most relevant factors favor applying the law of the state in which plaintiffs are located, because the alleged losses occurred in the states where plaintiffs are domiciled. *See Perdue v. HyVee, Inc.*, 455 F. Supp. 3d 749, 759 (C.D. Ill. 2020) (applying laws of the non-forum states to non-forum plaintiffs in data-breach action). As discussed below, there is no relationship between CDK and plaintiffs, so that factor does not come into play. But if it did, it would likely rest on the upstream relationship between CDK and its dealer customers, which would presumably point to the non-forum states (plaintiffs do not identify the relevant dealerships).

Moreover, "[u]nder Illinois choice-of-law rules, a conflict of law exists only where the application of one state's law over that of another state will make a difference in the outcome of a case." *Id.* at 758. As shown below, the law differs substantially in the relevant states and is outcome determinative on certain issues, such as the application of the economic-loss doctrine to negligence claims. Likewise, courts routinely find significant and dispositive variations in state unjust enrichment law. *See Lilly v. Ford Motor Co.*, 2002 WL 507126, at *2 (N.D. Ill. Apr. 3, 2002). In all events, however, the Court need not make a definitive choice at this juncture, given that plaintiffs' claims fail under any of the relevant states' laws (albeit for differing reasons).

## II.    Plaintiffs' Negligence Claim Fails as a Matter of Law

Under Illinois, California, Oklahoma, and Mississippi law, the elements of negligence are the same: duty, breach of duty, and causation. *See Clifford v. Crop Prod. Servs. Inc.*, 627 F.3d 268,

271 (7th Cir. 2010); *Conroy v. Regents of Univ. of Cal.*, 203 P.3d 1127, 1132 (Cal. 2009); *MeGee v. El Patio, LLC*, 524 P.3d 1283, 1285 (Okla. 2023); *Sanderson Farms, Inc. v. McCullough*, 212 So. 3d 69, 76 (Miss. 2017). Plaintiffs' negligence claim fails for four independent reasons. First, CDK's purported security failures did not proximately cause plaintiffs' injuries. Second, CDK did not owe plaintiffs a duty of care. Third, even if it did, plaintiffs do not plausibly allege CDK breached such duty. Fourth, the economic-loss doctrine bars plaintiffs' claim under Illinois and California law.

### A.     Plaintiffs Fail to Plead Proximate Cause

Plaintiffs have not shown that CDK's actions proximately caused their harm. "An essential element of a plaintiff's cause of action for any tort is that there be a proximate causal relationship between the act or omission of the defendant and the damages which the plaintiff has suffered." *Lewis v. Lead Indus. Ass'n*, 793 N.E.2d 869, 874 (Ill. Ct. App. 2003). Proximate cause asks whether "the defendant's conduct is so closely tied to the plaintiff's injury that he should be held legally responsible for it." *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1128 (Ill. 2004). Proximate cause "reflects the reality that the judicial remedy cannot encompass every conceivable harm that can be traced to alleged wrongdoing," *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014), and that "ripple effects" should only carry liability so far. *In re Boeing 737 MAX Pilots Litig.*, 638 F. Supp. 3d 838, 853 (N.D. Ill. 2022). The "greater the separation between the conduct and the injury, the less likely that proximate causation can bridge the gap." *Id*.

Foreseeability is not the ultimate test for proximate causation. "A claim can fail for lack of proximate causation even if the downstream effects are foreseeable." *Id*.; *see also MacLeod v. Commonwealth Edison*, 248 N.E.3d 1133, 1154 (Ill. App. Ct. 2024) ("One way in which the concept of proximate cause operates is through the remoteness doctrine"). In fact, "[m]ost cases

that preclude a plaintiff from recovering against a defendant for economic losses actually are based on the legal policy that, *regardless of foreseeability*, a certain type of plaintiff should not be able to recover against a negligent defendant." *Kraft Chem. Co. v. Ill. Bell Tel. Co.*, 608 N.E.2d 243, 246 (Ill. App. Ct. 1992). "That is ordinarily the case if the harm is purely derivative of misfortunes visited upon a third person by the defendant's acts." *Lexmark*, 572 U.S. at 133. The "general tendency of the law, in regard to damages at least, is not to go beyond the first step." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 534 (1983).

A leading Seventh Circuit case, *Dundee Cement Corp. v. Chem. Labs, Inc.*, 712 F.2d 1166 (7th Cir. 1983), shows how these principles work in practice. In that case, a truck owned by the defendant overturned on a highway and forced a road closure. *Id*. at 1167. The plaintiff was a business affected by the closure that sought to recoup economic losses that it attributed to the inability of its customers to access its business location. *Id*. The Seventh Circuit held that even though the plaintiff had shown but-for cause, the plaintiff's economic losses were too remote from the accident. *Id*. "The type of plaintiff generally precluded from recovering is the third party who suffers no physical damage to person or property, but who claims harm as a result of injury to the person or property of another. . . . Requiring a defendant who has tortiously injured one person to pay for resulting losses experienced by every other person would place an entirely unreasonable burden on all human activity." *Id*. at 1168-89.

Another example is *Christensen v. Boeing Co.*, 2021 WL 83548, at *2-3 (N.D. Ill. Jan. 11, 2021), where thousands of flight attendants for Southwest Airlines sued Boeing, the maker of the 737 Max aircraft, for lost wages. The flight attendants claimed that: (i) Boeing made negligent misrepresentations to regulators and rushed the aircraft into production and service leading to two crashes (i.e., the alleged negligent conduct); (ii) causing the FAA to ground the 737 MAX planes

7

(i.e., make defendant's product unavailable); (iii) causing Southwest Airlines to cancel flights (i.e., direct impact to defendant's customer); and (iv) causing purported lost wages to the flight attendants (i.e., indirect impact on downstream plaintiffs). *Id*. The court found that "plaintiffs' alleged injuries (to the extent they have pled any) are not a direct result of defendant's alleged misconduct, but an indirect result of defendant's inability to supply Southwest Airlines with functioning aircrafts. Such indirect claims are barred under Illinois law." *Id*. at *2; *see also Boeing*, 638 F. Supp. 3d at 853 (rejecting claims by defendants' customers' employees for lost income associated with the grounding of 737 MAX planes).

These principles of proximate cause preclude plaintiffs' claim here. Plaintiffs similarly allege: (i) CDK's cybersecurity approach caused a ransomware attack (i.e., the alleged negligent conduct), *see* Compl. ¶¶ 73-74; (ii) causing CDK to shut down its systems temporarily (i.e., make CDK's product unavailable), *id*. ¶ 20; (iii) causing dealerships who use CDK software products to have a more difficult time maintaining their inventory (i.e., direct impact on CDK's customers), *id*. ¶¶ 43, 46-47, 50, 53, 56; and (iv) causing lost profits to plaintiffs who ordered parts from those dealerships (i.e., indirect impact to downstream plaintiffs), *id*. ¶¶ 44, 47, 51, 54, 57. Plaintiffs do not allege that their data was disclosed or that *they* were unable to use CDK's software products or services. Like *Christensen*, Plaintiffs' alleged injuries "are not a direct result" of CDK's "alleged misconduct, but an indirect result" of CDK's alleged "inability to supply" its dealership customers with uninterrupted software products and services. 2021 WL 83548, at *2.

In fact, plaintiffs' causal chain is even more attenuated than *Dundee* or *Christensen* because plaintiffs' theory of liability is riddled with additional actions of independent third parties, including dealerships and consumers. For instance, plaintiffs ask this court to also assume (because they do not plead) that: (a) CDK's dealerships were unable to sell vehicles or fulfill parts orders

and did not have sufficient inventory to tide them over through the limited period in which CDK's software was unavailable; (b) plaintiffs could not use alternative means, such as working with other dealerships or vendors, to obtain the necessary parts or sell vehicles; (c) despite non-completion of scheduled vehicle repairs and delayed payments, plaintiffs did not recoup their costs a week or two later when those repairs could have been completed and payments received; and (d) consumers did not have *any* other reason for choosing not to complete repairs or vehicle sales. These additional steps inject further uncertainty and make this complaint a straightforward candidate for dismissal.

Courts in each of the relevant states regularly dismiss complaints with similar degrees of attenuation for lack of proximate cause. *See, e.g.*, *Kraft Chem.*, 608 N.E.2d at 246 (dismissing tort claims by plaintiffs who could not use the telephone after a contractor severed a fiber optic cable); *Rardin v. T&D Mach. Handling, Inc.*, 890 F. 2d 24, 29 (7th Cir. 1989) (barring recovery of lost profits by a printing business after assembly company's negligence damaged a press and delayed its operation); *S. Cal. Gas Leak Cases*, 18 Cal. App. 5th 581, 594 (2017) (declining to "hold [defendant] accountable to business plaintiffs for all the costs its accident caused" as doing so "would promote virtually unlimited responsibility"). A "plaintiff who complains of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts is generally said to stand at too remote a distance to recover." *Douglas v. Trustmark Nat'l Bank*, 201 F. Supp. 3d 800, 809 (S.D. Miss. 2016). Here, "to establish the causal connection between" CDK's alleged cybersecurity deficiencies and plaintiffs' alleged business losses, it is "necessary to heap conclusion upon conclusion as to the course events would have taken," which is fatal. *Coker v. Sw. Bell Tel. Co.*, 580 P.2d 151, 154 (Okla. 1978).

While plaintiffs urge it was foreseeable that CDK's allegedly inadequate security measures could lead to a ransomware attack, which in turn could affect CDK's customers, it is objectively unreasonable to require CDK to foresee and assume potential infinite liability extending to all potential downstream persons or businesses that may (however many steps removed) rely on dealerships that use CDK's products and services. "Permitting recovery for all foreseeable claims for purely economic loss could make a manufacturer liable for vast sums," because it "would be difficult for a manufacturer to take into account the expectations of persons downstream who may encounter its product." *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 874 (1986); *see also Coldwell Banker Residential Brokerage Co. v. Superior Ct.*, 117 Cal. App. 4th 158, 167 (2004) ("A [defendant] exposed to negligence claims from all foreseeable third parties faces potential liability far out of proportion to its fault"); *Dillon v. Greenbriar Digging Serv., Ltd.*, 919 So. 2d 172, 177 (Miss. Ct. App. 2005) ("[A] defendant is not liable for damages which are remote or collateral, or which result from a remote, improbable or extraordinary occurrence, although such occurrence is within the range of possibilities flowing from Defendant's negligent act.").[5]

As the court in *Boeing* put it, if "someone is trying to recover damages based on misfortune suffered by a stranger, it is a good sign that the chain of causation is a little too long, and a little too weak." 638 F. Supp. 3d at 854 (finding liability should not extend to defendants' customers' employees). "[D]ata breaches . . . are an unavoidable part of modern life. The effects may be real.

---

[5] The threat actors' criminal actions are also an intervening cause that cuts off any liability from CDK to plaintiffs. A "wilful, malicious, or criminal act breaks the chain of causation." *Permenter v. Milner Chevrolet Co.*, 91 So. 2d 243, 245 (Miss. 1956). Any cybersecurity shortcomings that plaintiffs allege at worst "only furnished the condition or occasion from which the injuries were received," by plaintiffs downstream, "but it did not put in motion the negligence and wrongful agency that caused the injury." *Mitchell Crane Servs., Inc. v. Page*, 126 So. 3d 29, 32-33 (Miss. 2013).

But the common law has never allowed everyone affected by someone else's accident to recover their economic losses." *Id.* at 858. Plaintiffs' negligence claim should be dismissed.

### B. Plaintiffs Fail to Plead a Duty of Care Owed by CDK to Plaintiffs

Plaintiffs also fail to allege that CDK owed *them* a duty of care. The "touchstone of this court's duty analysis is to ask whether a plaintiff and a defendant stood in such a *relationship* to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1097 (Ill. 2012) (emphasis in original). The "relationship" analysis generally considers "the probability or foreseeability that the defendant's negligent conduct will result in harm to the plaintiff" and "the desirability in terms of social policy for the extension of such a duty." *Bloomingdale State Bank v. Capitol Bank of Chicago*, 451 N.E.2d 599, 601-02 (Ill. App. Ct. 1983).[6] As with proximate cause, the attenuated relationship between CDK and plaintiffs precludes a finding that CDK owed these plaintiffs the alleged duties to prevent the economic harms they assert.

The complaint alleges four duties: (i) to "preserve and protect the information being stored, transferred, and secured," Compl. ¶ 70; (ii) "to provide data security" consistent with industry standards or statute, *id.* ¶¶ 72, 75; (iii) to "ensure that Defendant's software tools and other services stayed operational and did not experience extended outages or unavailability," *id.* ¶ 70; and (iv) "to prevent foreseeable harm to others," *id.* at ¶ 73.[7] Each fails as a matter of law.

---

[6] *See also Wofford v. E. State Hosp.*, 795 P.2d 516, 519 (Okla. 1990) ("duty depends on the relationship between the parties and the general risks involved in the common undertaking"); *Melican v. Regents of Univ. of Cal.*, 151 Cal. App. 4th 168, 180 (Cal. App. Ct. 2007) (discussing "socially and judicially acceptable limit on recovery of damages" and noting "foreseeability is not synonymous with duty; nor is it a substitute."); *Clausell v. Bourque*, 158 So. 3d 384, 390 (Miss. Ct. App. 2015) ("duty of care requires the consideration of public policy matters and is a question of law for the court.").

[7] Plaintiffs reference unspecified internal policies and CDK's public statements on the importance of cybersecurity. Compl. ¶¶ 31-34. But "a company's own internal policies cannot give rise to the type of legal duty necessary to support a negligence claim." *Pearson v. Walmart Inc.*, 2021 WL 4477816, at *3 (N.D. Ill. Sept. 30, 2021); *see also Hanouchian v. Steele*, 51 Cal. App. 5th 99, 110 (Cal. App. Ct. 2020); *Lamb v. The Scotts Miracle-Gro Co.*, 2007 WL 1959291, at *7 (E.D. Okla. July 2, 2007).

***Duty to Protect Information.*** Whatever the merits of a duty to "preserve and protect information," they are inapplicable here. Plaintiffs allege lost profits from business interruption. They do not allege that CDK possessed their data, let alone that their data was disclosed, or that they suffered harm from that disclosure. Nor could they, given the results of CDK's investigation. *See supra* note 1. Whether a duty to protect information exists is therefore irrelevant to this case.

To CDK's knowledge, no court has relied on a duty to protect information in circumstances resembling those here. When courts have recognized a duty to protect information, it has been a duty to safeguard the *personal* information of individuals—but those cases are "not general negligence cases" like this one. *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 897 (C.D. Cal. 2024). This is not a case like, for example, *Smith v. Loyola Univ. Med. Ctr.*, where the defendant "collected the plaintiffs' nonpublic personal information and disseminated that information to unauthorized third parties." 2024 WL 3338941, at *7 (N.D. Ill. July 9, 2024). Plaintiffs' duty-to-protect-information theory simply does not work where there are no allegations that plaintiffs' data was exfiltrated or that the imposition of such a duty would have prevented their alleged harm.

***Duty to Provide Data Security.*** There is no abstract duty to protect the whole world from the consequences of a cyberattack. At a minimum, there is no free-floating, common-law duty of care to maintain data-security measures that protect all downstream businesses from a cyberattack, and this Court, sitting in diversity, must "take state law as it is rather than predicting novel developments." *Knight v. Enbridge Pipelines (FSP) L.L.C.*, 759 F.3d 675, 678 (7th Cir. 2014); *see also Coatney v. Ancestry.com DNA, LLC*, 93 F.4th 1014, 1020 (7th Cir. 2024). While "it can be said, with the benefit of hindsight, that everything is foreseeable," the relevant duty question is "whether the injury was reasonably foreseeable at the time defendant engaged in the allegedly negligent action." *Simpkins*, 965 N.E.2d at 1098. The lengthy causal chain (and multitude of

12

potential intervening third parties and factors) discussed previously confirms that the harm to the downstream businesses here was not reasonably foreseeable.

Moreover, to the extent there is a duty to provide data security consistent with "industry standards," the complaint fails to adequately define those standards. A plaintiff "fail[s] to establish the duty" where it "simply repeats a conclusory contention that" the defendant "failed to perform its duty in accordance with industry standards." *Rogers v. Shelter Mut. Ins. Co.*, 2011 WL 4565472, at *5 (S.D. Miss. Sept. 29, 2011).

Finally, to the extent that plaintiffs are invoking a statutory duty, they must, at a minimum, identify the statute. *See Roberson ex rel. Roberson v. Novartis Pharm. Corp.*, 2011 WL 1740137, at *2 (N.D. Ill. May 5, 2011) (dismissing negligence *per se* claim where plaintiff "failed to identify a specific statute in the complaint that [defendant] allegedly violated"). The only statute referenced is the Federal Trade Commission Act ("FTCA"). Compl. ¶ 75 ("15 U.S.C. § 45(a)"). But the FTCA guidance speaks of protecting *personal*, not *business* information, and certainly not *business operations*, which is the relevant consideration for these downstream businesses. *Id.* ¶¶ 36, 38.

**Duty to Ensure Availability of CDK's Software Products and Services.** CDK was unable to locate any precedent imposing a sweeping common-law duty to ensure the availability of software services for a stranger. Nor, absent a contractual relationship, have the relevant states recognized a common-law duty for a company to provide computer software or services to another. *See Philadelphia Indem. Ins. Co. v. Bellin Mem. Hosp.*, 2023 WL 6388208 (N.D. Ill. Sept. 29, 2023); *see also Vancouver Furniture v. Gen. Elec. Retail Sys.*, 967 F.2d 596 (Table), at *1 (9th Cir. 1992) (finding that there is no "legal duty to provide computer services and goods to [plaintiff] in the absence of their contractual agreement."). Even if CDK owed a common-law duty to keep

13

its software products and services operational, that duty would not extend to third parties like plaintiffs, which are not customers of CDK and do not use CDK's software services directly.

**Duty to Prevent "Foreseeable Harm."** Plaintiffs' catch-all category of "foreseeable harm" does not independently give rise to a duty. The Court should reject plaintiffs' attempt to recognize a duty of care from one commercial party to another, when there is no meaningful interaction between the two. *See*, *e.g.*, *S. Cal. Gas Leak Cases*, 18 Cal. App. 5th at 594 ("Without a special relationship, foreseeability is typically too tenuous to support the imposition of a duty of care to a third party."); *S. Cal. Gas Leak Cases*, 441 P.3d 881, 891 (Cal. App. Ct. 2019) ("no general duty to avoid the unintentional infliction of economic loss on another"); *Lowery v. Echostar Satellite Corp.*, 160 P.3d 959, 964 (Okla. 2007) (The foreseeability analysis "will not generally be extended beyond reason and good sense.").

Moreover, in imposing duty, courts consider "foreseeability of the injury," "likelihood of the injury," "the magnitude of the burden of guarding against the injury," and "the consequences of placing that burden on the defendant." *Simpkins*, 965 N.E.2d at 1097-98. Each factor weighs against a duty. Not only is it unlikely that a brief unavailability in service would leave plaintiffs "unable" to obtain parts or sell vehicles, but ensuring continuously available software products and services for the benefit of a party that does not pay for those services would be absurd, and protecting from any resulting injury impractical given the number of third parties involved.

In addition, "individuals (and businesses) do not owe an affirmative duty to protect or rescue a stranger." *Id.* at 1097. There "is no general duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons or tangible things." PROSSER AND KEETON ON THE LAW OF TORTS § 92 at 657 (5th ed. 1984). Plaintiffs allege purely economic harm, and in addition to the foreseeability considerations

14

above, duty is also an issue of policy. If CDK "had a duty to avoid financial harm to all downstream [customers] in its conduct, the scope of potential liability would be enormous and would severely restrict [CDK's] ability to protect its own financial wellbeing. The law would not impose such an immense burden." *Kafka v. Wells Fargo Sec., LLC*, 2024 WL 4533332, at *2 (2d Cir. Oct. 21, 2024) (applying Illinois law).

Finally, the relevant state laws do not generally recognize a duty of care to protect against third-party actions (here the threat actor) unless there is a "special relationship" between the parties. *See generally Wright ex rel. Wright v. United States*, 69 F. Supp. 3d 606, 615 (S.D. Miss. 2014); *Thornton v. Ford Motor Co*., 297 P.3d 413, 427 (Okla. App. 2012). These special relationships typically include: "(1) common carrier and passenger; (2) innkeeper and guest; (3) custodian and ward; and (4) landholder and member of the public who enters the land." *Hankins v. Alpha Kappa Alpha Sorority, Inc*., 447 F. Supp. 3d 672, 687 (N.D. Ill. 2020). Plainly, none of these relationships are present here. CDK does not owe the alleged duties of care to plaintiffs.

## C. Plaintiffs Fail to Sufficiently Plead Breach of Duty

Plaintiffs also fail to plausibly allege that CDK breached any duty of care that it owed to plaintiffs. Plaintiffs allege that CDK breached its duties by asserting in conclusory fashion that CDK failed to "provide adequate data security to safeguard its systems." Compl. ¶ 76; *see id.* ¶¶ 78-79. This single, unsupported factual allegation is insufficient to show breach. Plaintiffs cannot simply proceed under *res ipsa loquitor*: since a cyberattack occurred, CDK must have been negligent. They must "plausibly allege not only that there was a data breach, but that the breach was caused by [defendant's] unreasonable conduct." *In re Waste Mgmt. Data Breach Litig.*, 2022 WL 561734, at *5 (S.D.N.Y. Feb. 24, 2022). Bald allegations that CDK failed to "provide adequate data security to safeguard its systems" are not enough, and plaintiffs must instead specify security measures that CDK did or did not implement—they have not. "The implied premise that because

15

data was hacked [defendant's] protections must have been inadequate is a 'naked assertion[] devoid of further factual enhancement' that cannot survive a motion to dismiss." *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 717-18 (8th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

### D.      Illinois and California Economic-Loss Rules Bar Plaintiffs' Negligence Claim

Under Illinois and California law, a plaintiff cannot bring a negligence claim purely for economic losses. Plaintiffs here seek only to recover economic losses—not damages for personal injury or loss of property. The repair-shop plaintiffs allege that they "suffered damages associated with the interruption of [their] business, including loss of fixed operating costs and losses related to [their] inability to fulfill service requests." Compl. at ¶¶ 44, 51, 54, 57. The vehicle-broker plaintiff alleges it "suffered economic damages, including lost earnings from vehicle sales." *Id*. at ¶ 48. These are quintessential economic losses. *See In re Chicago Flood Litig.*, 680 N.E.2d 265, 274 (Ill. 1997); *Calcagno v. Personalcare Health Mgmt., Inc.*, 565 N.E.2d 1330, 1339 (Ill. App. 1991); *Uddin v. Automobili Lamborghini Am., LLC*, 2025 WL 458421, at *15 (N.D. Cal. Feb. 11, 2025). Hence, Illinois and California economic-loss doctrines kick in to bar their claim.

*Illinois*. Under the *Moorman* doctrine, plaintiffs cannot recover purely economic losses in tort. *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 448, 451-52 (Ill. 1982). The doctrine is grounded in the principle that the "remedy for economic loss, loss relating to a purchaser's disappointed expectations due to deterioration, internal breakdown or nonaccidental cause," lies in contract. *Id*. at 450. But a contract between the parties need not exist for the doctrine to apply. As the Seventh Circuit has emphasized, "although there is no contract, the policies that animate the principle which denies recovery of consequential damages in contract cases apply fully and forbid a tort end-run around that principle." *Rardin*, 890 F.2d at 28. The doctrine thus bars recovery in tort for "diminished commercial expectations"—regardless of whether a contract exists between the parties. *Boeing*, 638 F. Supp. 3d at 859; *see also Admiral Indem. Co. v. Otis Elevator*

16

*Co.*, 2021 WL 4306145, at *1 (N.D. Ill. Sept. 22, 2021) (tenant could not recover economic losses relating to commercial bargain between the building owner and defendant elevator manufacturer).

The Illinois Supreme Court's decision in *Chicago Flood* illustrates this principle. There, plaintiff could not recover economic losses resulting from disappointed commercial expectations relating to a commercial bargain between the defendant and a non-party construction-services contractor. 680 N.E.2d at 268-69. As the court explained, "behind the economic loss rule is the recognition that the economic consequences of any single accident are virtually limitless," and that "[t]he economic loss rule avoids the consequences of open-ended tort liability." *Id.* at 274.

This case falls squarely within the *Moorman* doctrine. Plaintiffs are suing to recover economic losses stemming from disappointed commercial expectations that arise—if at all—from a commercial bargain between CDK and CDK's dealership customers for the provision of software products and services. *See* Compl. ¶¶ 43, 50, 53, 56 (alleging "operating" and service request fulfillment "losses" due to inability to "order and obtain parts" from dealerships during outage); *Id.* at ¶ 47 (alleging "economic damages" due to inability to "obtain vehicles or finalize sales contracts with dealerships who use CDK's systems."). Plaintiffs thus "simply seek to recover, in tort, downstream economic losses. Under Illinois law, that's a non-starter." *Boeing*, 638 F. Supp. 3d at 860. The economic-loss doctrine "bars liability in a suit for lost profits resulting from negligence in carrying out a commercial undertaking." *Rardin*, 890 F.2d at 28.

None of the three exceptions to the *Moorman* doctrine applies. The exceptions are: "(1) where the plaintiff sustained damage, i.e., personal injury or property damage, resulting from a sudden or dangerous occurrence; (2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, i.e., fraud; and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying

17

information for the guidance of others in their business transactions." *Chicago Flood*, 680 N.E.2d at 275 (emphasis removed). Plaintiffs do not allege that they sustained personal injuries or property damage or that CDK engaged in fraud. Nor do they allege that CDK made negligent misrepresentations to plaintiffs. To the contrary, plaintiffs concede that they have *no direct relationship* with CDK. *Id*. at ¶¶ 19, 29. The economic-loss doctrine bars any recovery in tort, and the negligence claim under Illinois law should be dismissed.

*California.* A similar conclusion follows under California law. The California Supreme Court has warned of the "endless ripple effects of a negligence claim based upon pure economic loss." *S. Cal. Gas Leak Cases*, 441 P.3d at 889. California law thus holds that "purely economic losses are not recoverable in tort." *R Power Biofuels, LLC v. Chemex LLC*, 2016 WL 6663002, at *4 (N.D. Cal. Nov. 11, 2016). California vehicle broker DLR is suing to recover in tort the type of downstream economic losses—i.e., lost vehicle sale commissions based on a tenuous and remote causal chain—that California's economic-loss doctrine precludes.

Moreover, the doctrine's exceptions are inapplicable here: "(1) personal injury, (2) physical damage to property, (3) a 'special relationship' existing between the parties, or (4) some other common law exception to the rule." *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1038 (N.D. Cal. 2021). The first and second exceptions fail. There is no allegation that DLR suffered personal injury or property damage. The fourth exception is also plainly inapplicable, because it "focus[es] on intentional conduct," which DLR does not plead. *Id*. at 1040.

Nor does the complaint plead facts supporting a "special relationship." The California special-relationship test generally considers six factors: (i) "the extent to which the transaction was intended to affect the plaintiff," (ii) "the foreseeability of harm to the plaintiff," (iii) "the degree of certainty that the plaintiff suffered injury," (iv) "the closeness of the connection between the

defendant's conduct and the injury suffered," (v) "the moral blame attached to the defendant's conduct," and (vi) "the policy of preventing future harm." *Id*. at 1039. Factor one favors CDK: CDK's services were not created for plaintiffs—those services instead were created for CDK's dealership customers. *Id*. The second, fourth, and fifth factors also weigh against a special relationship given that the downstream harms alleged (lost commissions from vehicle sales) were not the foreseeable result of the ransomware attack against CDK—especially where, as here, DLR does not allege that it has ever interacted with CDK, or even that it was aware of CDK prior to the breach. As to the third factor, DLR's purported injuries are far from "certain," since it does not provide any specifics that would show that it actually lost sales because of the incident (as opposed to just having those sales temporarily delayed). Finally, the sixth factor does not apply because CDK, as a business, already "has incentives to maintain its reputation and relationship with consumers," and holding CDK liable would not further a policy of preventing future harm. *Id.* Accordingly, DLR's claim is barred under the California economic-loss doctrine.

## III. Plaintiffs' Unjust Enrichment Claim Fails as a Matter of Law

CDK was not unjustly enriched. The complaint alleges that plaintiffs "conferred a benefit on" CDK "by paying money" to CDK's customers for auto parts, "part of which funds" CDK's customers then purportedly "*passed on* to [CDK] in the form of payment for its software and services." Compl. ¶¶ 43, 50, 53, 56, 84. Plaintiffs claim that in exchange, CDK was obligated to provide software services to its dealership customers "without interruption" and that CDK failed to fulfill this obligation, resulting in ripple-effect harm to these downstream plaintiffs. *Id*. ¶ 86. These allegations are insufficient for plaintiffs to state a claim for unjust enrichment under Illinois, California, Mississippi, or Oklahoma law.

*Illinois*. Under Illinois law, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the

19

fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). Plaintiffs' unjust enrichment claim fails under Illinois law for three reasons.

*First*, "[u]njust enrichment is not a separate cause of action under Illinois law." *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 595 (N.D. Ill. 2020). If "an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Id*. Because plaintiffs' negligence and unjust enrichment claims rest on the same alleged conduct, these claims fall together. *Compare* Compl. ¶ 70 *and* ¶ 84.

*Second*, plaintiffs fail to plausibly plead that CDK retained the alleged benefit "to the plaintiffs' detriment." *HPI Health Care*, 545 N.E.2d at 679. Here, plaintiffs allege CDK was enriched, and plaintiffs impoverished, when CDK retained money from *non-party dealers*—some unidentified portion of which may or may not have come to the dealers from plaintiffs—in exchange for CDK's provision of uninterrupted software services to its dealership customers (which, again, are not plaintiffs in this action). Compl. ¶ 84. This theory is baseless. Plaintiffs allege only that they "purchase[d] auto parts from dealerships." *Id*. ¶¶ 43, 46, 50, 53, 56. They do not allege they paid for parts they did not receive, or that they earmarked any specific portion of their payments to dealers to be passed on to CDK for uninterrupted software services to the dealers.

Faced with similar allegations, the court in *Webster v. Bradford-Scott Data, LLC*, dismissed plaintiffs' unjust enrichment claim, finding plaintiffs "paid for services from their credit unions which they presumably received, and their credit unions paid for software from" the defendant, and there was no allegation that "any portion of" plaintiffs' "credit unions' payments would go to data security." 2025 WL 560917, at *14 (N.D. Ind. Feb. 20, 2025). Other courts reach

the same conclusion. *See In re SuperValu, Inc.*, 925 F.3d 955, 966 (8th Cir. 2019) (under Illinois law, no benefit conferred in exchange for data security where plaintiffs paid for groceries, not data security); *Perdue*, 455 F. Supp. 3d at 766 (similar as to food and gas); *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1072 (C.D. Ill. 2016) (similar as to food products).

Plaintiffs also fail to allege any facts supporting a pass-through payment to CDK. Plaintiffs do not allege what CDK dealership customers they paid money to, what portion of their payment was passed on to CDK, or how it was "passed on" to CDK. *See* Compl. ¶¶ 82-88. Courts consistently dismiss unjust enrichment claims when the plaintiff fails to allege facts demonstrating how the alleged benefit was transferred from the plaintiff to the defendant. *See Barletti v. Connexin Software, Inc.*, 2023 WL 6065884, at *3 (E.D. Pa. Aug. 17, 2023) ("[N]owhere in the Complaint do [plaintiffs] assert facts regarding how their money flowed to" the defendant, and "without some direct tracing of the money, funding a business that pays another business is not enough to constitute the conferral of a benefit."); *see also In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*, 2010 WL 2813788, at *24 (D.N.J. July 9, 2010) (similar); *TCF Mortg. Corp. v. Gelber Holding Co.*, 1991 WL 230843, at *4 (N.D. Ill. Oct. 29, 1991) (dismissing claim where plaintiffs could not show funds originated with plaintiff). Without such facts, plaintiffs cannot establish that CDK was enriched to *plaintiffs*' detriment.

*Third*, retention of the alleged benefit by CDK would not be unjust. Plaintiffs do not seek to recover for payments they made directly to CDK, because they allege no such payments. Rather, plaintiffs allege that they made vehicle-parts payments to dealers, and that some unidentified portions of those payments were "passed on" by the dealers to CDK. Compl. ¶ 84. "When someone other than the plaintiff transfers the benefit to the defendant, however, courts require an additional showing." *Indep. Tr. Corp. v. Fid. Nat. Title Ins. Co. of New York*, 577 F. Supp. 2d 1023, 1047

21

(N.D. Ill. 2008). In those circumstances, a defendant's retention of the benefit is unjust only if the plaintiff shows "(1) the benefit should have been given to the plaintiff, but that the third party gave it to the defendant by mistake; (2) that the defendant obtained the benefit through wrongful conduct; or (3) that the plaintiff has a better claim to the benefit than the defendant." *Id*.

None of these circumstances applies here. For starters, plaintiffs do not allege CDK's customers gave CDK payments for software services by mistake. *See* Compl. ¶¶ 82-88. Nor do plaintiffs allege that CDK wrested plaintiffs' parts payments from CDK's dealership customers through wrongful conduct. Allegations that "CDK failed to fulfill [its] obligation" to provide uninterrupted software services to its dealer customers alone are insufficient. *Id*. ¶¶ 86, 88. It "is not enough to show that the defendant, at some point in time, behaved 'wrongfully'; rather, the plaintiff must show that the defendant *procured the benefit* . . . through some type of wrongful conduct." *Indep. Tr. Corp.*, 577 F. Supp. 2d at 1051. Lastly, plaintiffs have not shown that they have a better claim to the payments that CDK received from its customers for its software services. *See*, *e.g.*, *Vill. of Rockton, Ill. v. Sonoco Prods. Co.*, 135 F. Supp. 3d 700, 711 (N.D. Ill. 2015). That would make no sense. The only party to have even a potential claim on the payments for services, if at all, would be CDK's customers that paid for those services. *See*, *e.g.*, *Asch v. Teller, Levit & Silvertrust, P.C.*, 2003 WL 22232801, at *7 (N.D. Ill. Sept. 26, 2003) (noting it was third-party, not plaintiffs, who would be entitled to the fees paid). Plaintiffs' third-party unjust enrichment claim must fail.

**California.** Under California law, the "elements of a claim of quasi-contract or unjust enrichment are (1) a defendant's receipt of a benefit and (2) unjust retention of that benefit at the plaintiff's expense." *MH Pillars Ltd. v. Realini*, 277 F. Supp. 3d 1077, 1088 (N.D. Cal. 2017). California plaintiff DLR's claim fails for two reasons.

*First*, CDK did not retain a benefit at DLR's "expense." DLR seeks disgorgement of the financial benefit that it allegedly "conferred on [CDK] by paying money" to CDK's customers. Compl. ¶¶ 84, 87. However, DLR alleges only that it "*receives commissions* from the dealerships for arranging sales." Compl. ¶ 46. It does not allege that it *made any payment* to CDK's customers. DLR cannot seek disgorgement of a benefit it did not confer. *See Cal. Crane Sch., Inc. v. Google LLC*, 722 F. Supp. 3d 1026, 1042 (N.D. Cal. 2024) (unjust enrichment claim failed where plaintiff did "not identify what benefit the Apple defendants received" from plaintiff).

*Second*, under California law, a "critical limitation" on unjust enrichment "is that one who confers a benefit officiously is not entitled to restitution. It must ordinarily appear that the benefits were conferred by mistake, fraud, coercion or request; otherwise, though there is enrichment, it is not unjust." *Nibbi Bros., Inc. v. Home Fed. Sav. & Loan Ass'n*, 205 Cal. App. 3d 1415, 1422 (1988). Even if a benefit were alleged here, the complaint does not allege that it was conferred on CDK due to "mistake, fraud, coercion or request." *Fed. Deposit Ins. Corp. v. Ching*, 189 F. Supp. 3d 978, 998 (E.D. Cal. 2016); *see also Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772, 782-83 (N.D. Cal. 2024); *Russell v. Walmart, Inc.*, 680 F. Supp. 3d 1130, 1133-34 (N.D. Cal. 2023).

**Mississippi.** A claim for unjust enrichment similarly fails as a matter of Mississippi law. In Mississippi, unjust enrichment is a quasi-contractual theory of liability in which "the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain, but should deliver to another." *Ellis v. Anderson Tully Co.*, 727 So. 2d 716, 719 (Miss. 1998). The basis of the claim is "a promise, which is implied in law, that one will pay to the person entitled thereto that which in equity and good conscience is his." *Jordan v. Nationwide Tr. Servs., Inc.*, 2014 WL 6982641, at *5 (S.D. Miss. Dec. 9, 2014). For instance, in *Blouin v. Johnson & Johnson*, 2017 WL 4969345, at *2 (S.D. Miss. Nov. 1, 2017), the court found

23

that plaintiff, whose son was injured by a drug manufactured and marketed by defendants, could not sustain a claim for unjust enrichment where she failed to plead "a direct relationship with" the defendant, that the defendant "promised to pay them any funds," or that the defendant held "any funds which rightfully belong to them." *Id.*; *see also Cole v. Chevron USA, Inc.*, 554 F. Supp. 2d 655, 673-74 (S.D. Miss. 2007) (plaintiffs could not show "defendants were unjustly enriched by price gouging . . . without first alleging that they purchased gasoline from the defendants").

The same is true here. Plaintiffs do not plead facts supporting a direct relationship with CDK or that CDK promised them funds. Nor does CDK hold any funds belonging to plaintiffs. Plaintiffs also fail to allege facts supporting how or if the money they paid was transferred to CDK, and even if it were, plaintiffs do not have a better claim to the money—plaintiffs paid CDK's dealership customers for parts and received parts, that money then in turn became the property of the dealerships to pay (or not pay) to CDK for services as the dealers saw fit.

Finally, CDK's retention of payment made pursuant to a contractual obligation (from its dealership customers) is not unjust. *See In re B.C. Rogers Poultry, Inc.*, 455 B.R. 524, 571 (Bankr. S.D. Miss. 2011) (defendant's retention of benefit pursuant to lease was justified); *see also Jim Pegram Farms v. JPMorgan Chase Bank, N.A.*, 2022 WL 4088079, at *4 (N.D. Miss. Sept. 6, 2022) (finding nothing "unjust when the funds were received [by defendant] as payments for" intermediary's debts). CDK is not "in possession of money or property" that should "in good conscience and justice" be provided to plaintiffs. *Ellis*, 727 So. 2d at 719.

**Oklahoma.** Oklahoma law also precludes an unjust enrichment claim here. Under Oklahoma law, unjust enrichment is "a condition which results from the failure of a party to make restitution in circumstances where it is inequitable, i.e., the party has money in its hands that, in equity and good conscience, it should not be allowed to retain." *Harvell v. Goodyear Tire &*

24

*Rubber Co.*, 164 P.3d 1028, 1035 (Okla. 2006). Oklahoma defines unjust enrichment as "(1) the unjust (2) retention of (3) a benefit received (4) at the expense of another." *See Orthman v. Premiere Pediatrics, PLLC*, 545 P.3d 124, 136-37 (Okla. App. 2024). A "claim for unjust enrichment requires an allegation of some active wrongdoing on the part of the person against whom recovery is sought such as fraud, abuse of confidence, or unconscionable conduct." *Randle v. City of Tulsa*, 2024 WL 2949398, at *7 (Okla. 2024). Here, there are no allegations of "active wrongdoing." Plaintiffs' allegations sound in negligence, and an unjust enrichment claim must fail. *See Hemp Hydrate Brands Corp. v. Priv. Label Supplements, Inc.*, 2024 WL 4256713, *4 (W.D. Okla. Sept. 20, 2024) (dismissing unjust enrichment claim where only claim of active wrongdoing (fraud), already failed). Finally, there is no evidence that CDK received or unjustly retained any payment for software services at plaintiffs' expense; plaintiffs paid for and received parts from the dealerships. *See Premiere Pediatrics, PLLC*, 545 P.3d at 137 (defendant's customers paid for medical services, not data protection, and did not unjustly retain a benefit); *Lee v. Enter. Fin. Grp.*, 2009 WL 1362605, at *2 (W.D. Okla. May 14, 2009) (similar). This claim should be dismissed.

### CONCLUSION[8]

For the foregoing reasons, plaintiffs' complaint should be dismissed with prejudice.

---

[8] At this time, CDK lacks sufficient information concerning plaintiffs' claims to assess whether they are subject to arbitration or other contract-based defenses. *See, e.g., Coatney*, 93 F.4th at 1019 (finding Illinois non-signatories may be compelled to arbitration under the doctrines of "(1) assumption, (2) agency, (3) estoppel, (4) veil piercing, and (5) incorporation by reference"). For the reasons described above, the Court should dismiss plaintiffs' claims under Rule 12(b)(6). If, however, plaintiffs' claims—ill-defined as they are—survive this motion to dismiss and discovery reveals facts that the claims actually arise out of contracts that contain arbitration clauses or class-action waivers, CDK fully intends to invoke such provisions. *See Hughes Masonry Co., Inc. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981).

25

DATED: May 23, 2025

Respectfully submitted,

/s/ Devin S. Anderson

Devin S. Anderson (*pro hac vice*)
Haley L. Darling (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel: (202) 389-5000
Facsimile: (202) 389-5200
Email: devin.anderson@kirkland.com
Email: haley.darling@kirkland.com

Martin L. Roth, P.C.
IL Bar No. 6296464
**KIRKLAND & ELLIS LLP**
333 West Wolf Point Plaza
Chicago, IL 60654
Tel: (312) 862-7170
Facsimile: (312) 862-2200
Email: rothm@kirkland.com

*Counsel for Defendant CDK Global, LLC*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 23, 2025 a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF CDK GLOBAL, LLC'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT** was electronically filed with the Court via the CM/ECF system which sent notification of such filing to all Counsel of Record.

Dated: May 23, 2025                    */s/ Devin S. Anderson*
                                                      Devin S. Anderson